UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

TODD C. BANK,

                                 **Plaintiff,**

   vs.                                                    5:21-CV-642
                                                                     (MAD/ATB)

NEW YORK STATE DEPARTMENT OF
AGRICULTURE AND MARKETS and RICHARD
BALL, *in his official capacity as Commissioner of
New York State Department of Agriculture and
Markets*,

                                 **Defendants.**

---

**APPEARANCES:**                                   **OF COUNSEL:**

**TODD C. BANK, ATTORNEY AT**        **TODD C. BANK, ESQ.**
**LAW, P.C.**
119-40 Union Turnpike
Fourth Floor
Kew Gardens, New York 11415
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **WILLIAM E. ARNOLD, IV, AAG**
**STATE ATTORNEY GENERAL**
300 South State Street, Suite 300
Syracuse, New York 13202
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff, an attorney who is proceeding *pro se*, commenced this action in the Eastern District of New York on December 21, 2020, challenging the constitutionality of N.Y. Agri. & Mkts. Law § 16(51), known as the Hate-Symbol Act, which prohibits the sale or display of symbols of hate on the grounds of the New York State Fair and any other fairs that receive

government funding. *See* Dkt. No. 12. On May 20, 2021, the Eastern District transferred the case to this Court. *See* Dkt. No. 22. Currently before the Court is Defendants' motion to dismiss the amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 37. As set forth below, Defendants' motion is granted.

## II. BACKGROUND

On December 15, 2020, then-Governor Andrew Cuomo signed into law "The Hate-Symbol Act" which, among other things, precludes private actors from attaching or affixing to state property hate symbols that run counter to the message of acceptance and inclusiveness that the State sought to convey by means of the New York State Fair. As originally enacted, the Act prohibited the selling or displaying of any symbols of hate on the grounds of the State Fair.

On January 28, 2021, the Act was amended (via bill A.10729-A) by removing the prohibition to sell hate symbols on the fairgrounds, and now reads as follows:

> The department [of Agriculture and Markets] through the commissioner shall have power to ... [51] take any measures necessary to prohibit any person from attaching or affixing to state owned property on the grounds of the state fair any symbols of hate, as defined in section one hundred forty-six of the public buildings law, or any similar image, or tangible personal property, inscribed with such an image, unless the image appears in a book, digital medium, or otherwise serves an educational or historical purpose.

N.Y. Agri. & Mkts. Law § 16(51). Section 146(2) of the Public Buildings Law provides that "the term 'symbols of hate' shall include, but not be limited to, symbols of white supremacy, neo-Nazi ideology or the Battle Flag of the Confederacy."

In the amended complaint, Plaintiff alleges that he intends to attend the State Fair "within each of the next several years[.]" Dkt. No. 12 at ¶ 11. Plaintiff "wishes that, when he attends the State Fair and is on state-owned property, he will be exposed to the widest possible range of items

2

that are protected by the First Amendment of the United States Constitution ... and are attached or affixed to state-owned property on the grounds of the State Fair." *Id.* at ¶ 12.  Plaintiff contends that "'symbols of hate' as defined by the Hate-Symbol Act are protected by the First Amendment." *Id.* at ¶ 13.  Therefore, Plaintiff argues that the Hate-Symbol Act is unconstitutional "insofar as it prohibits, by non-state persons, the attaching or affixing, to state-owned property on the grounds of the State Fair, of symbols that are protected by the First Amendment." *Id.* at ¶ 14.

In their motion to dismiss, Defendants contend that the amended complaint must be dismissed because Plaintiff lacks standing and because the claim is not ripe for adjudication. *See* Dkt. No. 37-2 at 11-16.  Moreover, Defendants argue that the amended complaint fails on the merits because the Hate-Symbol Act's prohibition on attaching or affixing hate symbols to state property during the State Fair is government speech, that does not enjoy First Amendment protection. *See id.* at 16-22.

As set forth below, Defendants' motion to dismiss is granted and the amended complaint is dismissed in its entirety.

### III. DISCUSSION

**A.    Standard of Review**

*1. Rule 12(b)(1)*

"Pre-answer motions to dismiss for lack of standing are governed by Federal Rule of Civil Procedure 12(b)(1)." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 154 (E.D.N.Y. 2018).  "In order to survive a defendant's motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'" *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)).  "[A]t the pleading stage, standing

allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015).

When standing is challenged on the basis of the pleadings, the court must "'accept as true all material allegations of the complaint, and must construe the complaint in favor of [Plaintiffs].'" *All. for Open Society Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 227 (2d Cir. 2011) (quotation omitted). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it ..., the plaintiff has no evidentiary burden." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (citation omitted).

Importantly, "[t]o establish standing to obtain prospective relief," in this case, declaratory relief, "a plaintiff 'must show a likelihood that he will be injured in the future.'" *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quotation omitted); *see also Abidor v. Napolitano*, 990 F. Supp. 2d 260, 272 (E.D.N.Y. 2013) ("An action for declaratory judgment does not provide an occasion for addressing a claim of alleged injury based on speculation as to conduct which may or may not occur at some unspecified future date"). "That is, a plaintiff must demonstrate a 'certainly impending' future injury." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). To do so, "a plaintiff cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that injury would be prevented by the equitable relief sought." *Id.*

### 2. Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must

accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line

from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.[1]

**B.    Standing**

In their motion to dismiss, Defendants contend that Plaintiff lacks standing because the amended complaint does not allege that Plaintiff himself wishes to affix hate symbols to state buildings and/or property during the State Fair. *See* Dkt. No. 37-2 at 13. Rather, the amended complaint focuses on his desire to be "exposed" to symbols that others may attempt to affix to state property. *See id.* Since Plaintiff fails to identify any individuals who are seeking to affix such hate symbols to buildings during the Fair, *i.e.*, a willing speaker subject who is being prevented from speaking because of the Hate-Symbol Act, his derivative First Amendment right-to-receive claim must be dismissed for lack of standing. *See id.* at 12-14. In response, Plaintiff claims that the amended complaint establishes standing where he alleges that he "'wishes that, when he attends the State Fair and is on state-owned property, he will be exposed to the widest possible range of items that are protected by the First Amendment ... and are attached or affixed to state-owned property on the grounds of the State Fair.'" Dkt. No. 38 at 5-6 (quoting Dkt. No. 12 at ¶ 12). Plaintiff contends that his amended complaint clearly demonstrates that he "wishes to know, to the maximum possible extent, what the 'marketplace of ideas' will produce, which [Plaintiff] would be less able to do per each restriction on that marketplace." *Id.* at 6. Therefore, Plaintiff argues that, "if the Hate-Symbol-Amendment Act were in effect, [Plaintiff] would be unable to know whether the absence of affixed 'hate' symbols (or the relative lack of them in the event that not everyone complies with the Act) is the result of the 'marketplace of ideas' or the

---

[1] Although Plaintiff has brought this action *pro se*, he is an attorney and, therefore, is not entitled to the special solicitude generally afforded to *pro se* litigants. *See Harbulak v. Suffolk Cnty.*, 654 F.2d 194, 198 (2d Cir. 1981); *see also Fenner v. City of New York*, 392 Fed. Appx. 892, 894 n.1 (2d Cir. 2010).

Potemkin village that the Act pretends to create." *Id.*

As the Second Circuit has explained, standing has two components: "constitutional standing, a mandate of the case or controversy requirement in Article III [of the United States Constitution], and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Cookson Am., Inc.*, 710 F.3d 470, 474 (2d Cir. 2013). It is settled law that constitutional standing requires a plaintiff to demonstrate that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). On the other hand, "[p]rudential standing includes, *inter alia*, 'the general prohibition on a litigant's raising another person's legal rights' and 'the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches [of government].'" *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). "The party invoking federal jurisdiction bears the burden of establishing prudential and constitutional standing[.]" *Id.* Further, a plaintiff must have Article III standing in order for the Court to have subject matter jurisdiction over its claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Warth v. Seldin*, 422 U.S. 490, 498 (1975) (describing Article III standing as "the threshold question in every federal case, determining the power of the court to entertain the suit").

Although the First Amendment refers only to a right to speak and makes no mention of a

right "to listen," "to hear," or "to know," the Supreme Court has held that "the protection afforded [by the First Amendment] is to the communication, to its source and to its recipients both." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). "Therefore, where one enjoys a right to speak, others hold a 'reciprocal right to receive' that speech, which 'may be asserted' in court.  A precondition of asserting this 'right to receive,' however, is the existence of a 'willing speaker.'" *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007) (quoting *Va. State Bd. of Pharmacy*, 425 U.S. at 756-57).  "A willing speaker is one that states that the challenged law infringes upon or chills its exercise of rights and that but for the law in question, the speaker would be more willing to speak." *Animal League Defense Fund v. Kelly*, 434 F. Supp. 3d 974, 995 (D. Kan. 2020) (citing *Pa. Family Inst.*, 489 F.3d at 166-67).

In the present matter, the amended complaint does not allege that Plaintiff himself seeks to affix hate symbols to state buildings and/or property during the State Fair.  Rather, the amended complaint focused on Plaintiff's "wish" to be "exposed" to hate symbols that other, unidentified individuals will ostensibly attempt to affix to state property during the State Fair.  *See* Dkt. No. 12 at ¶ 12.  As Defendants correctly argue, the mere fact that the Hate-Symbol Act presupposes that there may exist a "willing speaker" who would affix hate symbols to state property does not provide Plaintiff with third-party standing.  As the Second Circuit has stated, "[w]e will not infer the existence of a willing speaker from the mere existence of the [challenged regulation], for to do so would eviscerate Article III's requirement that a party demonstrate a specific and particularized injury in fact." *Price*, 305 Fed. Appx. at 716; *see also Bond v. Utreras*, 585 F.3d 1061, 1078 (7th Cir. 2009) ("Imagining the existence of a willing speaker runs contrary to the Supreme Court's command that injuries-in-fact must be 'actual or imminent, not conjectural or hypothetical'")

(quotation omitted); *Howe v. Burwell*, No. 2:15-cv-6, 2015 WL 4479757, *22 (D. Vt. July 21, 2015) (dismissing the plaintiff's First Amendment claim for lack of standing where he failed to plausibly allege the existence of a willing speaker).

Since the amended complaint is devoid of any allegations that identify a willing speaker, Plaintiff lacks standing to challenge the Hate-Symbol Act. As such, the Court grants Defendants' motion to dismiss for lack of subject matter jurisdiction.

**C.      Ripeness**

As with standing, ripeness involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise. A case is ripe when it presents a "'a real, substantial controversy, not a mere hypothetical question.'" *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)). A claim is not ripe when it depends on some future event, which may never occur. *See id.* (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)). Federal courts may not exercise jurisdiction unless a claim is ripe. *See Nutritional Health All. v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967)). In the context of an action seeking a declaratory judgment challenged on ripeness grounds, courts must consider "(1) the fitness of the issues for judicial review, and (2) the injury or hardship to the parties of withholding judicial consideration." *Id.* (citing *Abbott Labs.*, 387 U.S. at 149, 87 S. Ct. 1507).

Further, a ripeness determination requires analysis of whether a claim is both constitutionally ripe and prudentially ripe. *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 687-88 (quoting *Simmonds v. INS*, 326 F.3d 351, 356-57 (2d Cir. 2003)); *N.Y. Civil Liberties Union v.*

9

*Grandeau*, 528 F.3d 122, 130 (2d Cir. 2008) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S. Ct. 2026, 155 L. Ed. 2d 1017 (2003)). Constitutional ripeness refers to whether a matter presents an actual dispute and finds its origins in Article III's "Case and Controversy" requirement. *See Simmonds*, 326 F.3d at 357. In this way, constitutional ripeness overlaps with the requirement that a plaintiff must have standing to sue. *See Grandeau*, 528 F.3d at 130 n.8 (quotation omitted). This differs from prudential ripeness which requires a court to determine if a case would be better heard at some later time. *See Simmonds*, 326 F.3d at 357. These categories of ripeness analysis are both designed to protect against a matter's premature adjudication. *See id.*

In the present matter, the Court agrees with Defendants that this matter is also subject to dismissal on ripeness grounds. As discussed above, Plaintiff has failed to identify a willing speaker who intends to affix hate symbols to state property at the New York State Fair. Accordingly, this matter is not fit for judicial review because Plaintiff's claim is based on "possibilities" that "may never occur." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 170 (3d Cir. 2007) ("[H]ad [the plaintiff] established the existence of a willing speaker, the underlying challenge to the Canons and Rules themselves as having a chilling effect on speech would have been ripe"). Similarly, Plaintiff cannot establish any hardship caused by lack of adjudication because, without a willing speaker, there is no possibility of a future injury that requires the Court's immediate consideration. *See Grandeau*, 528 F.3d at 134 (quotation omitted).

As such, the Court finds that, at this time, Plaintiff's claim is unripe and must be dismissed for this alternative reason.[2]

---

[2] Even if Plaintiff had standing and the claim was ripe for review, it would still be subject to dismissal on the merits because the Hate-Symbol Act's prohibition on attaching or affixing hate

(continued...)

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 37) is **GRANTED**;[3] and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 1, 2022
      Albany, New York

*Mae A. D'Agostino*
U.S. District Judge

---

[2](...continued)
symbols to state property during the New York State Fair constitutes government speech not subject to First Amendment protection. *See United Veterans Memorial & Patriotic Ass'n of the City of New Rochelle v. City of New Rochelle*, 615 Fed. Appx. 693, 694 (2d Cir. 2015) (holding that flags hung on the armory's flagpole constituted government speech, notwithstanding the city's delegation of the right to display and maintain flags to a private association); *Shurtleff v. City of Boston*, 986 F.3d 78, 86-94 (1st Cir. 2021) (holding that the city's decision to deny a Christian organization's request to display a Christian flag on a city hall flagpole, where the city had a history of displaying third-party flags and using flags to communicate messages, was government speech); *Mech v. Sch. Bd. of Palm Beach Cnty., Fla.*, 806 F.3d 1070, 1076-79 (11th Cir. 2015) (finding that the school's decision to remove banners from their fences that advertised a tutoring business was government speech where the tutoring business shared the same address as the tutor's pornography business because "the banners exhibit strong indicia of government endorsement and control").

[3] Since the Court is dismissing this action based on the lack of Article III standing and ripeness, the dismissal is without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (holding that "where a case is dismissed for lack of Article III standing, as here, that disposition cannot be entered with prejudice, and instead must be dismissed *without prejudice*") (emphasis in original).